## IN RE BREENE.

1. CUSTODIAN OF PUBLIC MONEYS APPROPRIATING THE INTEREST.— The receipt, by the legal custodian of public moneys, of interest thereon from banks with which the same is deposited for safe-keeping, is not in and of itself alone an offense at common law.

2. CONSTITUTIONAL PROVISION FORBIDDING, NOT SELF-EXECUTING.— The constitutional provision forbidding the making of profit by such officials out of public funds, and classifying the forbidden act as a felony, is not self-executing.

3. MANDATORY REQUIREMENT CONCERNING TITLES OF BILLS.— The constitutional inhibition against the passage of bills containing matters not embraced in the title is mandatory; but it should be liberally construed, so as to avert the evils against which it is aimed, and at the same time avoid unnecessarily obstructing legislation.

4. OBJECT OF CONSTITUTIONAL MANDATE.— The primary purpose of this constitutional provision is to avoid surprise and fraud upon the legislators and people in the enactment of laws; but a further important end is attained by avoiding surprise to those over whom the laws become operative.

5. LIMITS OF LEGISLATIVE POWER RESPECTING TITLES OF BILLS.— Tho general assembly may within reason make the title of a bill as comprehensive as it chooses; but when it elects to limit the title to a particular subdivision of some general subject the right to em-

| 14 | 401 |
| 14 | 417 |
| 14 | 401 |
| 17 | 250 |
| 14 | 401 |
| 18 | 558 |
| 14 | 401 |
| 21 | 49 |
| 21 | 152 |
| 22 | 175 |
| 5a | 459 |
| 14 | 401 |
| 23 | 75 |
| 23 | 262 |
| 14 | 401 |
| f26 | 360 |
| f26 | 374 |
| 14 | 401 |
| 28 | 440 |
| 28 | 441 |
| 14 | 401 |
| 32 | 313 |

body in the bill matters pertaining to other subdivisions of such subject is relinquished.

6. TEST WHETHER SUBJECT-MATTER OF BILL IS CLEARLY INDICATED BY ITS TITLE.— Nothing unreasonable, however, is required in this respect; and a matter is clearly indicated by the title when it is clearly germane to the subject mentioned therein.

7. PENAL PROVISION OF REVENUE ACT RELATING TO THE LOANING OR USING OF STATE FUNDS UNCONSTITUTIONAL.— Under a title providing "for the assessment and collection of revenue" was placed a provision making it a crime for the state treasurer to "loan out or in any manner use for private purposes" the public funds in his hands; held, that the penal provision was unconstitutional because not clearly expressed in the title.

## Original Proceeding.

PETITION by Peter W. Breene for a writ of habeas corpus.

Messrs. S. D. WALLING and C. S. THOMAS, for petitioner.

Messrs. SAM. W. JONES, L. S. DIXON and WELLS, McNEAL & TAYLOR, for respondents.

CHIEF JUSTICE HELM delivered the opinion of the court.

The right to inquire by habeas corpus into the matters presented in this case is not seriously challenged by respondents. Therefore, though counsel for petitioner consider the question at length, jurisdiction in the premises will be assumed without discussion.

The indictment under which petitioner is held in custody charges him with lending public moneys for private gain while occupying the office of state treasurer. He is not accused of otherwise misappropriating or misusing state funds, nor is any deficit or defalcation in connection therewith averred. The accusation is based upon the alleged fact that he received for his private advantage, from the banks mentioned in the indictment, interest upon state funds deposited therein by him while, as

treasurer of state, he was the constitutional custodian thereof.

The act mentioned in the indictment is not an offense at common law. The constitutional provision (sec. 13, art. 10) which forbids the making of profit by public officials out of public funds, and classifies the forbidden act as a felony, is conceded not to be self-executing. Therefore, statutory authority must be found to support the present proceeding against petitioner. If such authority exists, it is embodied in section 2948 of the General Statutes, which reads: "County treasurers shall be liable to a like fine [$1,000] for loaning out, or in any manner using, for private purposes, state or county funds in their hands, and the state treasurer shall be liable to a fine of not more than ten thousand dollars for a like misdemeanor, to be prosecuted by the attorney-general in the name of the state."

Several serious objections are urged against the validity of the foregoing statute. One of these objections being decisive of the case, the others will not be considered. The title of the act in which the section above quoted appears is "An act to provide for the assessment and collection of revenue, and to repeal certain acts in relation thereto." It is claimed that the subject-matter of the section is not clearly expressed in this title, and therefore that the statute is in conflict with the following section of the constitution:

"No bill except general appropriation bills shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." Sec. 21, art. 5.

Regarding this constitutional provision, we observe — *First*, that it is mandatory. Such is the view expressly declared by this court, and, with but two or three exceptions, adopted elsewhere. *Railroad Co. v. People*, 5 Colo.

40; *Wall v. Garrison,* 11 Colo. 515. *Second,* that it should be liberally and reasonably interpreted, so as to avert the evils against which it is aimed, and at the same time avoid unnecessarily obstructing legislation. *Clare v. People,* 9 Colo. 122; *Dallas v. Redman,* 10 Colo. 297. *Third,* that it embraces two mandates, viz.: one forbidding the union in the same legislative bill of separate and distinct subjects, and the other commanding that the subject treated in the body of the bill shall be clearly expressed in its title. Each of these mandates is designed to obviate flagrant evils connected with the adoption of laws. The former prevents joining in the same act disconnected and incongruous matters. The purpose of the latter is thus tersely and forcibly stated in *Dorsey's Appeal,* 72 Pa. St. 192: "Another purpose was to give information to the members, or others interested, by the title of the bill, of the contemplated legislation; and thereby to prevent the passage of unknown and alien subjects, which might be coiled up in the folds of the bill."

The provision undoubtedly deals with legislative procedure; but obedience thereto directly results in advising the people of the contents of bills that have become laws. It is quite as important to the official or the private citizen that he have the highest facilities for knowing the existing law, as that he have opportunity to offer criticism or suggestion upon pending legislation. He should not be left to discover, "coiled up in the folds" of an act apparently in no way concerning him, a provision affecting his most important interests. For instance, legislation seriously modifying the mechanic's lien or exemption laws should not be hidden under a title relating exclusively to railroads. This, the constitutional provision before us prevents. Therefore, while its primary purpose is to avoid surprise and fraud upon the legislators and people in the enactment of laws, a further important and beneficent end is attained.

Nor is the constitution unreasonable in this respect,

or difficult to comply with. When intelligently and care-
fully observed, it embarrasses proper legislation but lit-
tle. The general assembly may, within reason, make the
title of a bill as comprehensive as it chooses, and thus
cover legislation relating to many minor but associated
matters. For example, an act entitled "An act in rela-
tion to municipal corporations" may provide for the or-
ganization, government, powers, duties, offices and rev-
enues of such corporations, as well as for all other
matters pertaining thereto. "The generality of a title,"
says Judge Cooley, "is therefore no objection to it, so
long as it is not made a cover to legislation incongruous
in itself, and which by no fair intendment can be con-
sidered as having a necessary or proper connection."
Const. Lim. (5th ed.) 174. It is not essential that the
title shall specify particularly each and every subdivision
of the general subject. Such a requirement would lead
to surprising and disastrous results. Many titles would
not only be absurdly prolix, but the laws themselves
would be endangered by virtue of the inhibition against
duplicity of subjects. *Edwards v. Railroad Co.* 13 Colo.
59; *People v. Goddard,* 8 Colo. 432. Efforts to cover
specifically in the title all subordinate matters treated of
in the act have already jeopardized legislation in this
state, and only by the most liberal interpretation has the
court been able to save the statutes. *Canal Co. v. Bright,*
8 Colo. 144; *Clare v. People, supra.*

But the legislature may, on the other hand, undoubt-
edly contract the scope of a title to the narrowest limits.
When, however, in the exercise of this discretion, it sees
fit to thus restrict the title, care must be taken not to
transcend, in the body of the bill, the limit thus volun-
tarily fixed. "An act to amend section 78 of chapter c"
must not amend sections of chapter c other than the one
named. *People v. Fleming,* 7 Colo. 230. "An act to
provide for the payment of county and road taxes in
cash," must not authorize the purchase of outstanding

warrants at the lowest price offered, and create a special fund for this purpose. *People v. Hall*, 8 Colo. 485. If the title of a bill be limited to a particular subdivision of a general subject, the right to embody in the bill matters pertaining to the remaining subdivisions of such subject is relinquished. To hold otherwise would be to disobey the constitutional mandate, and invite the grave evils sought to be avoided thereby.

It will not do to say that the general subject of legislation may be gathered from the body of the act, for, to sustain the legislation at all, it must be expressed in the title. Moreover, we are bound to assume that the word "clearly" was not incorporated into the constitutional provision under consideration by mistake. It appears in but few of the corresponding provisions of other state constitutions — a fact that could hardly have been unobserved by the convention. That this word was advisedly used, and was intended to affect the manner of expressing the subject, we cannot doubt. The matter covered by legislation is to be "clearly," not dubiously or obscurely, indicated by the title. Its relation to the subject must not rest upon a merely possible or doubtful inference. The connection must be so obvious as that ingenious reasoning aided by superior rhetoric will not be necessary to reveal it. Such connection should be within the comprehension of the ordinary intellect as well as the trained legal mind. Nothing unreasonable in this respect is required, however; and a matter is clearly indicated by the title when it is *clearly germane* to the subject mentioned therein. Had the corresponding constitutional provision in Wisconsin contained the word "clearly," we doubt if the court would have reached the conclusion expressed in *Mills v. Charleton*, 29 Wis. 400. The supreme court of that state has made, we believe, a broader application of the rule under discussion than it has received elsewhere in the Union.

Let us proceed, in the light of the foregoing sugges-

tions, to consider briefly the legislation before us. Under a title providing "for the assessment and collection of revenue" is placed a provision making it a crime for the state treasurer to "loan out or in any manner use for private purposes" the public funds in his hands. That such uses of state funds should be forbidden will hardly be doubted; and that disobedience of the inhibition should be severely punished is equally beyond question. But the inhibition and the punishment should not be secreted in an act whose title expresses a wholly dissimilar subject. Can it be said that the crime of receiving and retaining interest on public funds, while deposited in responsible banks for safe-keeping, with its punishment of $10,000 fine (if the statute covers such acts), is clearly germane to the subject of *raising* revenue, either by the assessment and collection of taxes or otherwise?

Had the legislature been content with the title "An act in relation to revenue," the question before us would be relieved of the present embarrassment. Any and all provisions for raising, preserving and disbursing public funds would be germane to the general subject thus expressed. The acts forbidden undoubtedly relate to these funds, and the statute under consideration would, so far as the present objection is concerned, be valid. But that body saw fit, in its wisdom, to limit the bill by its title to one of the subordinate divisions of the above general subject, viz., the "raising" of revenue. The title gives no intimation that the act deals with the custody of public funds after they have reached the treasurer's hands. Proceedings relating to the *preservation* or *disbursement* of taxes are not incidents or concomitants to the *assessment* or *collection* thereof. The words "assessment" and "collection" are used alone. They have a clear and definite meaning, and by their exclusive use the ideas of "custody" and "disbursement" are rejected. With this rejection was necessarily relinquished the power to prescribe in the act regulations or inhibitions incidental

to the control, preservation or disbursement of funds in the treasury. It is a matter of vital importance that revenue, after its collection, be properly preserved and expended. But while regulations looking to these ends are connected with the general subject of revenue, they are not germane to the specific subject of *raising* or *obtaining* revenue.

Again, the proscribed uses of public funds apparently reach all revenue in the treasurer's hands, whether received through the assessment and collection of taxes or from other sources; and the most imaginative mind must fail to trace any connection between the forbidden acts, in so far as they relate to the use of funds accruing from the sale of public lands, payment of fees, and the like, and the subject of assessing and collecting taxes. We say "taxes," because, while the word "revenue" is employed, the act was unquestionably designed to deal alone with revenue obtained by taxation.

Further, the statute in question, together with section 13, article 10, of the constitution above mentioned, was doubtless inspired more by considerations of public policy than the suspicion of danger to the public revenue. The treasurer's bond protects the state from pecuniary loss, and the criminal law provides a punishment for the embezzlement of public moneys. Private speculation with public funds by the official custodians thereof is emphatically *contra bonos mores*. Its inevitable tendency is to corrupt political and official action, and degrade the public service.

The two additional considerations last above mentioned reinforce the view that the legislation in question would not be looked for under a title confined to the assessment and collection of taxes. But few persons, however cautious, would dream of finding concealed in a bill thus christened the legislation in question. We are compelled to hold the act in this respect unconstitutional.

It is considered unnecessary to enter into a critical re-

view or analysis of cases supporting the foregoing con-
clusions. The following is, however, a partial list of
authorities, in addition to the Colorado cases already
cited, that are believed to be pertinent: *Ellis v. Hutch-*
*inson,* 70 Mich. 154; *State v. Young,* 47 Ind. 150; *People*
*v. Allen,* 42 N. Y. 404; *People v. Commissioners,* 53
Barb. 70; *Dorsey's Appeal,* 72 Pa. St. 192; *City of St.*
*Antonio v. Gould,* 34 Tex. 49; *State v. Barrett,* 27 Kan.
213; *Brown v. State,* 79 Ga. 324; *Durkee v. City of Janes-*
*ville,* 26 Wis. 697; Cooley, Const. Lim. (5th ed.) 170 *et*
*seq.; Nester v. Busch,* 64 Mich. 657; *Thomas v. Collins,*
58 Mich. 64; *N. W. Manuf'g Co. v. Circuit Judge,* 58
Mich. 381; *Smith v. Auditor-General,* 20 Mich. 398; *Igoe*
*v. State,* 14 Ind. 239.

The statute under which petitioner's detention is made,
being unconstitutional, the prosecution falls, and he
should be set at liberty. It is accordingly so ordered.

*Petitioner discharged.*