**BOARD OF COUNTY COMMISSIONERS OF JEFFERSON COUNTY; Kevin J. McCasky, in his official capacity as Jefferson County Assessor; and Robert Bammerlin, in his official capacity as Jefferson County Treasurer, Plaintiffs–Appellants,**

v.

**CITY AND COUNTY OF BROOMFIELD,** successor to the City of Broomfield, Defendant–Appellee.

No. 01CA2333.

Colorado Court of Appeals, Div. II.

Dec. 5, 2002.

William A. Tuthill, III, County Attorney, Patricia W. Gilbert, Assistant County Attorney, Lily Oeffler, Assistant County Attorney, Golden, Colorado, for Plaintiffs–Appellants.

Hahn Smith & Walsh, P.C., David J. Hahn, John W. Smith, III, Edward J. Walsh, Cynthia A. Calkins, Denver, Colorado; Roy S. Howard, City Attorney, Tonya R. Haas, Deputy City Attorney, Broomfield, Colorado, for Defendant–Appellee.

Opinion by Judge CASEBOLT.

This declaratory judgment action involves interpretation of a constitutional amendment that created the City and County of Broomfield. Plaintiffs, the Board of County Commissioners of Jefferson County, the Jefferson County Assessor, and the Jefferson County Treasurer (collectively Jefferson County), appeal the judgment in favor of defendant, the City and County of Broomfield, the successor to the City of Broomfield. The trial court determined that the amendment gave Broomfield the power to retain and use taxes payable in 2002 attributable to properties that became part of the City and County of Broomfield on November 15, 2001, but which were previously located in and assessed for valuation by Jefferson County in 2001. We affirm.

Before November 15, 2001, the City of Broomfield was located in the separate counties of Jefferson, Adams, Boulder, and Weld, and city residents paid taxes to the county in which their property was located. Under a constitutional amendment enacted by Colorado voters, the City of Broomfield became the City and County of Broomfield on November 15, 2001. *See* Colo. Const. art. XX, §§ 10–13.

In January 2001, the Jefferson County Assessor listed, appraised, and valued for assessment the property in Jefferson County that would become part of the City and County of Broomfield. That same month, Broomfield informed Jefferson County that it intended to collect and retain all property taxes payable in 2002 attributable to that property.

Jefferson County then initiated this action, seeking a declaratory judgment that it was entitled to those disputed taxes and an injunction prohibiting Broomfield from retaining that money. Broomfield filed a motion for a judgment on the pleadings. The trial court found in favor of Broomfield, and this appeal followed.

## I.

Jefferson County contends that the trial court erred in interpreting Colo. Const. art. XX, §§ 10–13 to allow Broomfield to retain property taxes collected in 2002, attributable to Jefferson County's 2001 assessment on property that became part of the City and County of Broomfield on November 15, 2001. We disagree.

Interpretation of a constitutional amendment, like the interpretation of a statute, presents a question of law that we review de novo. *See City of Wheat Ridge v. Cerveny,* 913 P.2d 1110 (Colo.1996).

When interpreting a constitutional amendment, we should ascertain and give effect to the intent of those who adopted it. If, as here, the provision was adopted by popular vote, we must determine what the People believed the language of the amendment meant when they approved it. To do so, we must give the language the natural and popular meaning usually understood by the voters. *See Urbish v. Lamm,* 761 P.2d 756 (Colo.1988).

Courts should not engage in a narrow or technical reading of language contained in a constitutional amendment if that reading would defeat the intent of the People. If the intent of the electorate is not clear from an amendment's language, courts should construe it in light of the objective the amendment seeks to achieve and the mischief it seeks to avoid, and should consider the amendment as a whole. *Zaner v. City of Brighton,* 917 P.2d 280 (Colo.1996).

Colo. Const. art. XX, § 10 provides, in pertinent part:

On and after November 15, 2001, all territory in the municipal boundaries of the city of Broomfield shall be detached from the counties of Adams, Boulder, Jefferson, and

Weld and shall be consolidated into a single county and municipal corporation with the name "The City and County of Broomfield."

The transfer of government is provided for in Colo. Const. art. XX, § 12, which, as pertinent here, states:

> [O]n and after November 15, 2001, the city of Broomfield and those parts of the counties of Adams, Boulder, Jefferson, and Weld included in the boundaries of said city shall be consolidated into the city and county of Broomfield. The duties and terms of office of all officers of Adams, Boulder, Jefferson, and Weld counties shall no longer be applicable to and shall terminate with regard to the city and county of Broomfield.... The city council ... shall perform the duties of a board of county commissioners .... The city and county of Broomfield shall have the power to continue to impose and collect sales, use, and property taxes that were imposed by the city of Broomfield and the counties of Adams, Boulder, Jefferson, and Weld within the areas where said taxes were imposed on November 14, 2001 ....

These constitutional provisions are intended to be "in all respects self-executing and shall be construed so as to supersede any conflicting constitutional or statutory provision that would otherwise impede the creation of the city and county of Broomfield." Colo. Const. art. XX, § 13.

For a number of reasons, we conclude that these constitutional provisions permit Broomfield to retain and use property taxes payable in 2002, attributable to Jefferson County's 2001 assessment on property that became part of the City and County of Broomfield.

First, § 12 of art. XX provides that Broomfield "shall have the power to continue to ... collect ... property taxes that were imposed by ... the count[y] of ... Jefferson ... within the areas where said taxes were imposed on November 14, 2001." The word "continue" means to keep up or maintain, especially without interruption, a particular condition, course, or series of actions. *See Webster's Third New International Dictionary* 493 (1986). Thus, § 12 indicates that

Broomfield has the power to maintain, uninterrupted, the collection of taxes that were previously assessed by Jefferson County in 2001. Moreover, this power covers taxes "imposed by" the other counties.

Second, the execution section of the amendment requires that we construe the provisions to avoid any conflicts that would impede creation of the new entity. If Broomfield were not able to collect, retain, and use taxes due and payable in 2002, it would lack revenue to provide the necessary services to its citizens in that year.

Third, we must construe the language of the amendment in light of its objective to create a new city and county that is a fully functioning governmental entity upon creation. A construction permitting Jefferson County to obtain such revenues would frustrate this objective.

Fourth, in its analysis of the 1998 Ballot Proposals, the Legislative Council of the General Assembly made a number of remarks concerning the proposed amendments that support our interpretation. *See Carrara Place, Ltd. v. Arapahoe County Board of Equalization*, 761 P.2d 197 (Colo. 1988)(while not controlling, arguments in the Legislative Council research publication provide important insight into the electorate's understanding of a constitutional amendment when it was passed); *see also In re Proposed Initiative "Public Rights in Waters II"*, 898 P.2d 1076 (Colo.1995)(Legislative Council publication is a helpful source equivalent to the legislative history of a proposed amendment).

The Council noted an argument for adopting the proposed amendment was that the tax dollars of Broomfield residents would "stay in Broomfield to provide services to Broomfield residents" and "county taxes paid by Broomfield residents will no longer be distributed among the four counties." The Council further noted that the amendment would transfer current city services and responsibilities to the new city and county and would require Broomfield to deliver county services previously delivered by the four affected counties. In addition, the Council noted that the four affected counties would lose

almost $8 million dollars in revenue from property, sales, and use taxes "currently collected from the area within the City of Broomfield." *See* Colorado Legislative Council, *An Analysis of 1998 Ballot Proposals* (1998).

These comments indicate that Broomfield would need to retain and use the taxes previously imposed by the four counties to provide current services for residents of the new city and county previously provided by the other counties. They further recognize that the other four counties would necessarily lose revenue.

As Jefferson County asserts, the language of § 12 does not expressly allow Broomfield to "retain" and "use" the property taxes it collects. However, the narrow reading Jefferson County advocates would defeat what we perceive to be the intent of the People. Because voters must have known that Broomfield would assume the duties and responsibilities formerly carried out by other counties with respect to property within the new city and county, they also must have intended that Broomfield would have the power to retain and use the property taxes that Jefferson County formerly assessed and imposed.

## II.

■ Jefferson County nevertheless contends that a different interpretation is warranted because it provided services to Broomfield residents for most of 2001 and was therefore entitled to receive the taxes paid in 2002 for those 2001 services. In support of this proposition, it correctly notes that property taxes are paid and collected "in arrears" in the year following the one in which they were assessed and levied. *See* § 39–10–102, C.R.S.2002; *Hendricks v. Town of Julesburg*, 55 Colo. 59, 132 P. 61 (1913). It further correctly notes that, under §§ 39–1–105 and 39–1–107, C.R.S.2002, a perpetual tax lien on the properties at issue was created on January 1, 2001, for 2001 taxes to be paid in 2002. *See Israel v. Rifle Econolodge Joint Venture*, 793 P.2d 658 (Colo.App.1990). However, we disagree with the County's reasoning.

## A.

Jefferson County's contention reflects a misunderstanding of the statutory scheme that governs the assessment, levy, and collection of property taxes.

The property taxation process is outlined in various statutory provisions, and each taxing authority is assigned duties, responsibilities, and deadlines for completing each step in the process. *See* §§ 39–1–101 to 39–14–102, C.R.S.2002.

The valuation and assessment process begins in January in each county based on the property located in that county on January 1 of that year. *See* § 39–1–105; *Gilpin County Board of Equalization v. Russell*, 941 P.2d 257 (Colo.1997)("assessment" means the process of placing a value for tax purposes upon the property of a particular taxpayer).

Following opportunities for protest as to valuation, the county assessor certifies the assessments by August 25 of each year. *See* §§ 39–1–105 to 39–5–128.

Counties then prepare a proposed budget by October 15 that is to govern the following fiscal year. *See* § 29–1–105, C.R.S.2002; *see also* §§ 29–1–102(4), 29–1–108, C.R.S.2002 (the budget must include projections for expenditures, as well as the anticipated revenues for the upcoming fiscal year).

By December 22 of each year, the board of county commissioners, or the city council for Denver or Broomfield, must levy a tax against the assessed value of all taxable property located in the county and certify the levy to the assessor. *See* § 39–1–111, C.R.S. 2002. The assessor then delivers the tax warrant to the treasurer, commanding the treasurer to collect all taxes. *See* § 39–5–129, C.R.S.2002.

By January 10 of the following year, the treasurer must commence collection of the levied property taxes. *See* §§ 39–5–129, 39–10–101, C.R.S.2002. Those taxes are then available for expenditure by the political subdivision that levied them during the fiscal year in which they are collected. *See* § 39–1–112, C.R.S.2002.

It is apparent from a review of these provisions that a county actually pays for the services it provides in any given fiscal year with the tax revenue collected that same year, even though the revenues are based upon assessments and levies made the previous fiscal year. Consequently, here, although the property at issue was located in Jefferson County as of January 1, 2001, and Jefferson County performed the assessment and valuation function, upon the transfer of that property to the City and County of Broomfield on November 15, 2001, Broomfield acquired the rights, powers, and duties of Jefferson County and was then authorized to complete the taxation process.

Hence, Broomfield levied the taxes in December 2001 and was entitled to collect, retain, and use them in 2002, based on Jefferson County's assessments. And, pursuant to § 39–1–112, the Broomfield treasurer collected the taxes in 2002 and made those funds available to Broomfield because that political subdivision had levied the taxes.

Accordingly, Jefferson County's argument that it is entitled to the money collected in 2002 to pay for services it rendered in 2001 is incorrect. The services it rendered in 2001 were actually paid for with taxes collected in 2001; services rendered in 2002 by Broomfield are paid for with the taxes it collects in 2002. The fact that taxes are paid "in arrears" does not alter this conclusion.

Our interpretation of the constitutional amendments gives a consistent, harmonious, and sensible effect to the various statutes that create the property tax scheme. *See City of Grand Junction v. Sisneros,* 957 P.2d 1026 (Colo.1998)(statutes must be construed together as a whole, and courts interpreting them must strive to give consistent, harmonious, and sensible effect to all the parts). A different conclusion permitting Jefferson County to obtain the 2002 taxes would represent a windfall to it, because the services for the residents of the property no longer in Jefferson County, but now lying within Broomfield, must be provided and paid for by Broomfield in 2002.

**B.**

■ Similarly, Jefferson County's reliance on § 39–1–107, which creates a lien for general taxes on the date of assessment, is misplaced. That statute provides, in pertinent part, that a "lien of general taxes for the current year ... shall attach to all taxable property, real and personal, at 12 noon on the assessment date." Section 39–1–107(1), C.R.S.2002. The statute also provides that "taxes levied on real and personal property ... shall be a perpetual lien thereon, and such lien shall have priority over all other liens until such taxes ... have been paid in full." Section 39–1–107(2), C.R.S.2002.

However, the statute does not determine which entity is entitled to retain the property taxes assessed and levied in 2001. While a general tax lien attached to the property located in Jefferson County as of January 1, 2001, the statute does not indicate which entity, as between Jefferson County and the City and County of Broomfield, holds the lien. Further, the lien is inchoate until the taxes are levied, at which time the lien relates back and attaches as of the assessment date to give it priority over subsequently acquired liens. *See Wolf v. Antonoff,* 161 Colo. 473, 423 P.2d 840 (1967).

Here, the entity imposing the levy is the City and County of Broomfield, not Jefferson County. Thus, we are not persuaded that the lien statutes give Jefferson County a superior right to the taxes that are collected in 2002.

**III.**

■ Finally, we reject Jefferson County's assertion that the trial court procedurally erred in relying upon a factual determination not alleged in its complaint in deciding Broomfield's motion for judgment on the pleadings. While it is correct that, under C.R.C.P. 12(b), the court must accept as true all material allegations of the complaint in determining such a motion, the issue here is the proper interpretation of a constitutional amendment, which presents purely a question of law. *See City of Wheat Ridge v. Cerveny, supra.*

Here, the trial court concluded that if Broomfield were not allowed to retain the property taxes that are due and payable in 2002, it would lack revenue to provide required services to its citizens in that year. That determination is not the resolution of a disputed fact or a conclusion unwarranted by the language of the complaint. It is merely the result that would occur if Jefferson County's interpretation of the constitutional provisions were to prevail.

For these reasons, the trial court did not err in its interpretation of the constitutional amendment at issue.

The judgment is affirmed.

Judge JONES and Judge ROY concur.