BOARD OF COUNTY COMMISSIONERS OF ADAMS COUNTY, State of Colorado, Plaintiff–Appellant,

v.

CITY AND COUNTY OF BROOMFIELD, State of Colorado, Defendant–Appellee.

No. 02CA0787.

Colorado Court of Appeals, Div. I.

April 24, 2003.

Certiorari Denied Nov. 17, 2003.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2002.

James D. Robinson, Adams County Attorney, Jennifer Wascak Leslie, Assistant Adams County Attorney, Brighton, Colorado, for Plaintiff–Appellant.

Hahn, Smith & Walsh, P.C., David J. Hahn, John W. Smith, III, Edward J. Walsh, Cynthia A. Calkins, Denver, Colorado; Roy S. Howard, City Attorney, Tonya R. Haas, Deputy City Attorney, Broomfield, Colorado, for Defendant–Appellee.

Opinion by Judge VOGT.

In this declaratory judgment action to determine the allocation of property taxes, plaintiff, the Board of County Commissioners of Adams County, appeals the trial court judgment in favor of defendant, the City and County of Broomfield. We affirm.

## I.

The City of Broomfield formerly encompassed portions of Jefferson, Adams, Boulder, and Weld Counties, and city residents paid taxes to the county in which their property was located. Pursuant to a constitutional amendment enacted by Colorado voters, the City of Broomfield became the City and County of Broomfield (hereinafter, Broomfield) on November 15, 2001. *See* Colo. Const. art. XX, §§ 10–13.

In January 2001, the Adams County Assessor assessed all taxable property in the county, including that portion of the county that would later become Broomfield, for purposes of property taxes that would be payable in 2002. Broomfield subsequently declared its intention to collect and retain taxes on the property within its boundaries that was assessed by Adams County. Adams County then brought this action, seeking a declaration that it was entitled to these taxes. In December 2001, after the action was filed, Broomfield imposed a mill levy against all taxable property within its boundaries and, in 2002, began collecting those tax revenues.

The trial court granted Broomfield's motion for judgment on the pleadings. It concluded that the constitutional provisions creating Broomfield unambiguously evidenced the intent of the electorate to terminate Adams County's responsibility for providing services for Broomfield residents and to establish Broomfield as a fully functioning governmental entity with the resources to provide the required services. Thus, Broomfield was entitled to collect, retain, and distribute all property taxes on property within its boundaries, including the property assessed by Adams County in January 2001.

## II.

Adams County contends on appeal that the statutory scheme governing assessment and collection of property taxes, including the statute giving it a perpetual tax lien on property it assessed in January 2001, entitles it to retain the taxes on that property; that the constitutional provisions creating Broomfield did not extinguish its right to those taxes; and that the trial court erred in ruling to the contrary. We disagree.

### A.

We review de novo the trial court's construction of a constitutional amendment. *See Colorado Department of Labor & Employment v. Esser*, 30 P.3d 189 (Colo.2001); *see also City of Wheat Ridge v. Cerveny*, 913 P.2d 1110 (Colo.1996).

In interpreting a constitutional amendment, we must ascertain and give effect to the intent of the electorate in adopting the amendment. To determine intent, we

first examine the language of the amendment, giving the words their plain and commonly understood meaning. If the intent of the electorate is not clear from the language of the amendment, we construe the amendment in light of the objective sought to be achieved. *Zaner v. City of Brighton,* 917 P.2d 280 (Colo.1996).

Colo. Const. art. XX, § 10 provides, in pertinent part:

> On and after November 15, 2001, all territory in the municipal boundaries of the city of Broomfield shall be detached from the counties of Adams, Boulder, Jefferson, and Weld and shall be consolidated into a single county and municipal corporation with the name "The City and County of Broomfield."

Colo. Const. art. XX, § 12 addresses the transfer of government and includes the following language relevant to the issue presented here:

> [O]n and after November 15, 2001, the city of Broomfield and those parts of the counties of Adams, Boulder, Jefferson, and Weld included in the boundaries of said city shall be consolidated into the city and county of Broomfield. *The duties and terms of office of all officers of Adams, Boulder, Jefferson, and Weld counties shall no longer be applicable to and shall terminate with regard to the city and county of Broomfield.* ... The city council of the city and county of Broomfield ... shall perform the duties of a board of county commissioners .... *The city and county of Broomfield shall have the power to continue to impose and collect sales, use, and property taxes that were imposed by the city of Broomfield and the counties of Adams, Boulder, Jefferson, and Weld within the areas where said taxes were imposed on November 14, 2001* ....

(Emphasis added.)

Sections 10 through 13 of article XX are intended to be "in all respects self-executing and shall be construed so as to supersede any conflicting constitutional or statutory provision that would otherwise impede the creation of the city and county of Broomfield or limit any of the provisions of those sections." Colo. Const. art. XX, § 13.

Under the statutory scheme governing the assessment and collection of property taxes, taxable property is listed, appraised, and valued for assessment in the county in which it is located at twelve noon on January 1. Section 39–1–105, C.R.S.2002. Pursuant to § 39–1–107, C.R.S.2002, a tax lien attaches to all taxable property on the assessment date specified in § 39–1–105. Following opportunities for protest of the valuation, the county assessor must certify the assessments by August 25. *See* § 39–5–128, C.R.S.2002.

Counties then prepare a proposed budget for the following fiscal year and must, no later than December 22, "levy against the valuation for assessment of all taxable property located in the county on the assessment date ... the requisite property taxes for all purposes required by law." Section 39–1–111(1), C.R.S.2002; *see also* §§ 29–1–102(4), 29–1–105, 29–1–108, C.R.S.2002. By January 10 of the following year, the treasurer must commence collection of the levied property taxes, which are then available for expenditure by the county or other political subdivision that levied them. *See* §§ 39–1–112, 39–5–129, 39–10–101, C.R.S.2002.

## B.

In *Board of County Commissioners of Jefferson County v. City & County of Broomfield,* 62 P.3d 1086 (Colo.App.2002)(*Jefferson County*), a division of this court considered and rejected arguments made by Jefferson County that were essentially identical to those made by Adams County in this case.

In that case, the division reviewed the statutory scheme outlined above governing the assessment, levy, and collection of property taxes and rejected Jefferson County's argument that it was entitled to the money collected in 2002 for services it rendered in 2001. Rather, Broomfield, which had levied the taxes in December 2001 based on Jefferson County's previous assessments, was entitled to collect, retain, and use those taxes in 2002.

In so concluding, the division addressed the county's argument, similar to that raised by Adams County here, that it had a superior

right to the taxes based on the lien created in § 39-1-107:

> [Section 39-1-107] does not determine which entity is entitled to retain the property taxes assessed and levied in 2001. While a general tax lien attached to the property located in Jefferson County as of January 1, 2001, the statute does not indicate which entity, as between Jefferson County and the City and County of Broomfield, holds the lien. Further, the lien is inchoate until the taxes are levied, at which time the lien relates back and attaches as of the assessment date to give it priority over subsequently acquired liens.
>
> Here, the entity imposing the levy is the City and County of Broomfield, not Jefferson County. Thus, we are not persuaded that the lien statutes give Jefferson County a superior right to the taxes that are collected in 2002.

*Jefferson County, supra,* 62 P.3d at 1091 (citation omitted).

The division also reviewed the language of the constitutional amendment creating Broomfield and the analysis of the Legislative Council of the General Assembly concerning the proposed amendment. It concluded that the constitutional provisions permitted Broomfield to retain and use property taxes payable in 2002 that were attributable to Jefferson County's 2001 assessment.

In reaching that conclusion, the division again rejected an argument similar to one made in this case by Adams County, namely, that the constitutional provision giving Broomfield the power to "continue to impose and collect" taxes is insufficient because it does not include the right to "keep" or "retain" the taxes:

> As Jefferson County asserts, the language of § 12 does not expressly allow Broomfield to "retain" and "use" the property taxes it collects. However, the narrow reading Jefferson County advocates would defeat what we perceive to be the intent of the People. Because voters must have known that Broomfield would assume the duties and responsibilities formerly carried out by other counties with respect to property within the new city and county, they also must have intended that Broomfield would have the power to retain and use the property taxes that Jefferson County formerly assessed and imposed.

*Jefferson County, supra,* 62 P.3d at 1090.

We agree with the analysis and the result reached by the division in *Jefferson County* and conclude that it is largely dispositive of Adams County's contentions in this case.

### C.

We are not persuaded to reach a contrary conclusion based on Adams County's argument—which appears not to have been specifically raised in *Jefferson County*—that, by analogy to certain special district and boundary adjustment statutes, a newly created taxing entity such as Broomfield does not have a right to collect taxes for property assessed prior to its creation.

In support of its argument, Adams County relies on § 32-4-408(4)(i), C.R.S.2002, regarding special districts, and §§ 30-6-109.7(6), 30-11-408(1), and 31-12-113(3), C.R.S.2002, regarding boundary changes and annexations. These statutes generally provide that, for taxation purposes, the newly created entity is effective on the January 1 following its creation.

These provisions are inapplicable to Broomfield's right to collect and retain the property taxes at issue here.

Under the statutory scheme described above, a county pays for the services it provides in any given fiscal year with the tax revenues collected that same year, even though the revenues are based on assessments and levies made the previous fiscal year. *See Jefferson County, supra.* Further, applying the special district and boundary adjustment statutes to prevent Broomfield from collecting and using the disputed taxes would be contrary to § 13 of the constitutional amendment creating Broomfield, quoted above, which precludes interpreting statutory provisions applicable in other situations to limit the effect of the constitutional provisions creating Broomfield.

Accordingly, we conclude that the trial court did not err in entering judgment for Broomfield on Adams County's complaint for a declaratory judgment.

The judgment is affirmed.

Judge GRAHAM and Judge PIERCE * concur.