**COLORADO CRIMINAL JUSTICE REFORM COALITION, a nonprofit Colorado corporation; Christie Donner; Stephen Raher; Philip Cherner; and Ari Armstrong, Plaintiffs–Appellants,**

v.

**Joe ORTIZ, in his official capacity as executive director of the Colorado Department of Corrections; Peter Steinhauer, in his official capacity as Regent of the University of Colorado; Cindy Carlisle, in her official capacity as Regent of the University of Colorado; Patricia Hayes, in her official capacity as Regent of the University of Colorado; Susan C. Kirk, in her official capacity as Regent of the University of Colorado; Tom Lucero, in his official capacity as Regent of the University of Colorado; James A. Martin, Jr., in his official capacity as Regent of the University of Colorado; Jerry G. Rutledge, in his official capacity as Regent of the University of Colorado; Paul Schauer, in his official capacity as Regent of the University of Colorado; Gail Sheridan Schwartz, in her official capacity as Regent of the University of Colorado; Bill Owens, in his official capacity as Governor of Colorado; and the State of Colorado, Defendants–Appellees.**

No. 04CA0879.

Colorado Court of Appeals,
Div. III.

April 7, 2005.

Certiorari Denied Oct. 17, 2005.

Paul Grant, Englewood, Colorado, for Plaintiffs–Appellants.

John W. Suthers, Attorney General, Elizabeth H. McCann, Assistant Attorney General, Paul S. Sanzo, Assistant Attorney General, Denver, Colorado, for Defendants–Appellees Joe Ortiz, Bill Owens, and State of Colorado.

Joanne M. McDevitt, University Counsel, Charles Sweet, University Counsel, Denver, Colorado, for Defendants–Appellees Peter Steinhauer, Cindy Carlisle, Patricia Hayes, Susan C. Kirk, Tom Lucero, James A. Martin, Jr., Jerry G. Rutledge, Paul Schauer, and Gail Sheridan Schwartz.

CASEBOLT, J.

In this declaratory judgment action, plaintiffs, Colorado Criminal Justice Reform Coalition, Christie Donner, Stephen Raher, Philip Cherner, and Ari Armstrong, appeal the judgment in favor of defendants, Joe Ortiz, in his official capacity as executive director of the Colorado Department of Corrections; Peter Steinhauer, Cindy Carlisle, Patricia Hayes, Susan C. Kirk, Tom Lucero, James A. Martin, Jr., Jerry G. Rutledge, Paul Schauer, and Gail Sheridan Schwartz, in their official capacities as members of the Board of Regents of the University of Colorado; Bill Owens, in his official capacity as Governor of Colorado, and the State of Colorado. We affirm.

In 2003, the Colorado General Assembly enacted House Bill 03–1256, which authorizes the state to enter into lease-purchase agreements to finance two state construction projects, namely, a high-custody correctional facility for the Colorado Department of Corrections and new academic facilities for the University of Colorado Health Sciences Center at Fitzsimons.

Before the legislation was implemented, plaintiffs brought this declaratory judgment action challenging the constitutionality of HB 03–1256, asserting that it violates two separate provisions of the Colorado Constitution: the single subject requirement of article V, section 21; and article X, section 20(4)(b), known as the Taxpayer's Bill of Rights (TABOR), which, as relevant here, requires voter

approval in advance for the creation of any multiple-fiscal year debt or other financial obligation by the state.

The parties filed various dispositive motions. After full briefing, the trial court determined that HB 03–1256 did not violate the single subject requirement or run afoul of TABOR.

## I.

■ Plaintiffs contend that HB 03–1256 violates the single subject requirement because funding for a prison and funding for academic facilities constitute two separate subjects. We are not persuaded.

■ Statutes are presumed to be constitutional. Thus, a party challenging a statute on constitutional grounds ordinarily must prove the statute's unconstitutionality beyond a reasonable doubt. *See City of Greenwood Village v. Petitioners for Proposed City of Centennial,* 3 P.3d 427 (Colo.2000).

■ Article V, section 21 of the Colorado Constitution provides, in relevant part, that "[n]o bill ... shall be passed containing more than one subject, which shall be clearly expressed in its title." The purposes of this provision are (1) to notify the public and legislators of pending bills so that all may participate in the legislative process; (2) to make the passage of each legislative proposal depend on its own merits; and (3) to enable the governor to consider each single subject of legislation separately in determining whether to exercise the veto power. *Parrish v. Lamm,* 758 P.2d 1356 (Colo.1988); *In re House Bill No. 1353,* 738 P.2d 371 (Colo. 1987).

■ In furtherance of these purposes, the single subject requirement prohibits the joining in a single act of "disconnected and incongruous matters," *In re Breene,* 14 Colo. 401, 404, 24 P. 3, 3 (1890), or of "subjects having no necessary or proper connection." *Catron v. Bd. of Comm'rs,* 18 Colo. 553, 557, 33 P. 513, 514 (1893). Generally, the provision was not designed to hinder or unnecessarily obstruct legislation. To prevent it from having that effect, it must be liberally and reasonably construed. *Catron v. Bd. of Comm'rs, supra.*

■ So long as the matters encompassed in a bill are necessarily or properly connected to each other rather than disconnected and incongruous, the single subject requirement is met. *See Parrish v. Lamm, supra.*

Here, the title of HB 03–1256 notes that it concerns "the authority of the state to enter into lease-purchase agreements, and, in connection therewith, authorizing lease-purchase agreements for a high-custody correctional facility and for the University of Colorado Health Sciences Center at Fitzsimons." Thus, the subject is the use of lease-purchase agreements to fund capital construction of certain state facilities.

The legislation provides for two projects, both of which will use lease-purchase financing, and details the structure of those agreements. The fact that the bill authorizes two specific agreements for the construction of two projects does not convert the single subject into two disconnected and incongruous matters. Both projects are properly connected because they involve capital construction and the same type of financing procedures: lease-purchase agreements. Hence, they have a unifying or common objective, *see In re Proposed Initiative on Pub. Rights in Waters II,* 898 P.2d 1076 (Colo.1995), and are not disconnected and incongruous. *See Catron v. Bd. of Comm'rs, supra; In re Breene, supra.*

■ We are not persuaded by plaintiffs' argument that the statute is a product of unconstitutional "logrolling." That term encompasses "the practice of jumbling together in one act incongruous subjects in order to force a passage by uniting minorities with different interests when the particular provisions could not pass on their separate merits." *Colo. Gen. Assembly v. Lamm,* 704 P.2d 1371, 1383 (Colo.1985). Here, the subjects are congruent. Moreover, plaintiffs provide no record support for their argument that some legislators favored only one type of facility and not the other. Plaintiffs merely assume, without proof, that supporters of the hospital facilities would not have supported the prison, and vice versa.

Plaintiffs' reliance upon *In re House Bill No. 1353, supra,* is also misplaced. There, the court found a violation of the single subject requirement in a measure that was forty-four pages long and contained such disparate subjects as reduction of state contributions to various state employees' retirement funds, creation of a commission on information management in the department of administration, imposition of a charge against accounts of inmates of the department of corrections for each medical visit, imposition or increase of fees to be charged by various state agencies, extension of the termination date of the joint review process with respect to permits and licenses relating to the development of natural resources, and provision for forfeiture of abandoned intangible property held by banking and financial organizations and for crediting the proceeds to the state. Thus, the legislation did not rest on any single subject.

Here, in contrast, the single subject is authorization for lease-purchase agreements to fund two capital construction projects.

Plaintiffs' reliance upon *In re House Bill No. 168,* 21 Colo. 46, 39 P. 1096 (1895), is also misplaced. There, the court held a measure unconstitutional as a violation of the single subject requirement in article V, section 32, a section of the constitution different from the one at issue here. The appropriations bill at issue provided for "the Assessment, Levy and Collection of a State Tax, for the Support and Maintenance of Certain State Educational Institutions, Mentioned Therein; to Define the Duties of the County Treasurer in Connection Therewith; to Provide for the Election of a Treasurer of Each of Said Institutions, Define His Duties and to Repeal All Acts and Parts of Acts Inconsistent Therewith." The title itself demonstrates that the measure contained more than one subject, namely, funding for institutions, election of treasurers, definition of treasurers' duties, and repeal of any laws inconsistent with its provisions.

Moreover, the legislation at issue there was an appropriations measure, a subject about which the court noted the citizens of this state are particularly interested. And although without explaining what further restrictions section 32 imposes that section 21 does not, the court stated:

> Section 32 of Article V of the Colorado Constitution was adopted not merely to make emphatic the exception found in section 21. Its special office is to guard against improper appropriations of the public revenue, and to impose restrictions upon the manner of making the same not contained in, and in addition to those found in, section 21.

*In re House Bill No. 168, supra,* 21 Colo. at 52–53, 39 P. at 1098.

Here, HB 03–1256 provides, in pertinent part, that "[e]nactment of this act shall satisfy the requirements of sections 24–82–102(1)(b) and 24–82–801, [C.R.S.2004], which require authorization of a lease-purchase agreement by a bill other than an annual general appropriations bill or a supplemental appropriations bill." Thus, each lease-purchase agreement will remain subject to its own annual appropriation under section 32, which eases the concern regarding "improvident disbursements" of public revenue. *See In re House Bill No. 168, supra.*

Accordingly, we conclude that HB 03–1256 contains only one subject and thus does not violate the single subject requirement of article V, section 21 of the Colorado Constitution.

## II.

■ Plaintiffs next contend that HB 03–1256 will create multiple-year financial obligations within the meaning of TABOR, thus violating the constitutional requirement for voter approval. In connection with this assertion, they argue the trial court erroneously concluded that their TABOR challenge was a facial challenge to the constitutionality of the statute, rather than a challenge to the authority of the General Assembly to enact the statute. Additionally, they argue that because the trial court erroneously employed a facial challenge analysis, it did not apply the proper legal standards in considering defendants' motion for judgment on the pleadings, and that they are entitled to an evidentiary hearing. We are not persuaded.

### A. TABOR Challenge

Relying primarily on *In re House Bill 99–1325*, 979 P.2d 549 (Colo.1999), plaintiffs contend that their challenge to the constitutionality of HB 03–1256 requires a factual analysis of the economic realities and circumstances created by the legislation and that such an analysis will show that the lease-purchase agreements constitute, in reality, multiple-fiscal year financial obligations of the state. We disagree.

We initially note that the court in *In re House Bill 99–1325* stated that the presumption of constitutionality of statutes was not applicable there because the bill in question had not yet been passed and the General Assembly had indicated uncertainty concerning the constitutionality of the measure. Here, in contrast, HB 03–1256 was duly enacted and signed by the governor; thus it carries the presumption of constitutionality. *See City of Greenwood Village v. Petitioners for Proposed City of Centennial, supra.*

As pertinent here, TABOR requires voter approval in advance for the creation of any multiple-fiscal year direct or indirect debt or other financial obligation of the state.

■ Lease-purchase agreements for buildings or other improvements in which the parties are not bound to renew the lease annually do not create a debt or other financial obligation in the constitutional sense. *See In re House Bill 99–1325, supra.* Indications of debt in the constitutional sense are that (1) the obligation pledges revenues for future years; (2) the obligation requires use of revenue from a tax otherwise available for general purposes; (3) the obligation is legally enforceable against the state in future years; or (4) appropriation by future legislatures of monies and the payment of the obligation is nondiscretionary. *Glennon Heights, Inc. v. Cent. Bank & Trust*, 658 P.2d 872 (Colo. 1983).

■ Discretionary or contingent obligations are not constitutional debt. To create debt, one legislature, in effect, must obligate a future legislature to appropriate funds to discharge the debt. *See Gude v. City of Lakewood*, 636 P.2d 691 (Colo.1981).

Here, HB 03–1256 does not authorize the state to incur multiple-fiscal year debt or any other financial obligation. It provides, in pertinent part:

> The lease-purchase agreement[s] ... shall provide that all of the obligations of the state under such agreement[s] shall be subject to the action of the general assembly ... in annually making moneys available for all payments ... and that such obligations shall not be deemed or construed as creating an indebtedness of the state within the meaning of any provision of the Colorado constitution or the laws of the state of Colorado concerning or limiting the creation of indebtedness ... and shall not constitute a multiple-fiscal year direct or indirect debt or other financial obligation of the state within the meaning of section 20(4) of article X of the Colorado constitution. In the event the executive director of the department of corrections [or the board of regents of the University of Colorado acting on behalf of the state] does not renew the lease-purchase agreement ... the sole security available to the lessor shall be the property that is the subject of the nonrenewed lease-purchase agreement.

The measure does not pledge state revenues for future years because the payments under the agreements are subject to discretionary annual appropriations by the General Assembly and the executive director of the Department of Corrections or the regents of the university. In addition, the payments under the agreements do not require the use of revenue from a tax otherwise available for general purposes. Further, any parties contracting with the agencies do not have a legally enforceable right to require the General Assembly to appropriate sufficient funds for renewal of the lease term every year; renewal of the lease is tied to appropriation of sufficient funds, and if the lease is not renewed, the sole security available is the property that is the subject of the lease-purchase agreement. Finally, nothing in the bill limits the discretion of the legislature.

Plaintiffs' argument that the agreements would, in reality, be multiple-fiscal year financial obligations because the failure to ap-

propriate the necessary funds for annual lease payments would have a devastating effect on Colorado's credit rating has been rejected by the supreme court in another context. In *Glennon Heights, Inc. v. Central Bank & Trust, supra,* 658 P.2d at 879, the court concluded that "[t]he plaintiffs' arguments that nonrenewal of the lease will ruin the credit of the state . . . [is a matter] that may affect the legislature's exercise of its discretion, but do[es] not commit revenues available to future legislatures to the payment of rentals under the lease." The logic of that statement compels the same result here. *See also Bd. of County Comm'rs v. Dougherty, Dawkins, Strand & Bigelow Inc.,* 890 P.2d 199 (Colo.App.1994)(lease-purchase provisions for equipment employing similar terms did not run afoul of TABOR), *overruled on other grounds by In re House Bill 99–1325, supra.*

Further, the economic realities and circumstances referred to in *In re House Bill 99–1325, supra,* involved facts and circumstances not present in this case. Under the provision at issue there, the state would sell financing notes directly to investors. The measure itself, by stating the notes were negotiable instruments, implied that the notes contained an unconditional promise of payment. *See In re House Bill 99–1325, supra* (citing a statutory definition of a negotiable instrument as an unconditional promise or order to pay). Further, the court noted that "the existence of the security interest and the fact that such a security interest enhances the marketability of the [notes] support the conclusion that the obligation created by the [notes] is likely to extend beyond one year." *In re House Bill 99–1325, supra,* 979 P.2d at 558.

Here, although HB 03–1256 authorizes the issuance, distribution, and sale of instruments, it expressly sets forth that such issuance, distribution, and sale shall be made by the lessor and not by the state. In addition, it provides that the financing instruments do not create any relationship between potential investors and the state, nor do they create any obligation on the part of the state to purchasers of the financial instruments.

Accordingly, we conclude that any financial relationship arising from the lease-purchase agreements here does not come within the scope of direct or indirect debt or "other financial obligation whatsoever" proscribed by TABOR. The lease-purchase agreements do not pledge the credit of the state nor require the borrowing of funds. Hence, HB 03–1256 does not create any multiple-fiscal year debt or other financial obligation and therefore is not subject to voter approval. For these reasons, it does not violate TABOR.

In view of this determination, we need not separately address plaintiffs' contention that the trial court employed an incorrect legal standard in determining this issue.

### B. Judgment on the Pleadings

■ We also reject plaintiffs' contention that the trial court incorrectly granted defendants' motion for judgment on the pleadings.

■ In considering a motion for judgment on the pleadings, a court must construe the allegations of the pleadings strictly against the movant, must consider the allegations of the opposing parties' pleadings as true, and should not grant the motion unless the pleadings themselves show that the matter can be determined on the pleadings. *See Strout Realty, Inc. v. Snead,* 35 Colo.App. 204, 530 P.2d 969 (1975).

■ This standard is essentially consistent with that employed in resolving a motion to dismiss for failure to state a claim, *see Espinoza v. O'Dell,* 633 P.2d 455 (Colo.1981), and our review of a trial court's determination of such a motion is de novo. *See Abts v. Bd. of Educ.,* 622 P.2d 518 (Colo.1980).

■ Motions for judgment on the pleadings, therefore, are viewed with disfavor, and such a judgment will be affirmed only if it appears beyond doubt that the party asserting a claim can prove no set of facts in support of the claim that would entitle the party to relief. The allegations of the complaint must also be viewed in the light most favorable to the nonmoving party. *Dunlap v. Colo. Springs Cablevision, Inc.,* 829 P.2d 1286 (Colo.1992).

However, when the issue is the proper interpretation or analysis of a constitutional provision or statute, which presents purely a question of law, judgment on the pleadings may nevertheless be appropriate. *See Bd. of Comm'rs v. City & County of Broomfield*, 62 P.3d 1086 (Colo.App.2002).

Here, plaintiffs argue that their complaint contained material factual allegations, which must be taken as true. We conclude that the allegations assert legal arguments and contain conclusory statements, the correctness of which may be properly determined on a motion for judgment on the pleadings.

The pertinent allegations assert that voters were not asked to approve HB 03–1256 and that the measure authorizes the use of multiple-year direct or indirect debt; that the financing of a new prison facility will directly affect Colorado taxpayers inasmuch as it will impact the state credit rating and create future burdens on taxpayers; that plaintiffs have been harmed by passage of the measure; and that the financing of construction of new academic facilities for the University of Colorado will increase state debt. These assertions, in our view, are completely negated by the trial court's interpretation and our own interpretation of HB 03–1256 noted above. Hence, even though defendants denied these "allegations," the trial court did not err in granting judgment on the pleadings. *See Bd. of Comm'rs v. City & County of Broomfield, supra.*

The judgment is affirmed.

Judge DAILEY and Judge PLANK concur.