**Douglas BRUCE, individually and on behalf of all Pikes Peak Library District property taxpayers since January 1999 and all Pikes Peak Library District registered electors since November 1992, Plaintiff–Appellant and Cross–Appellee,**

v.

**PIKES PEAK LIBRARY DISTRICT, Does IX, Defendant–Appellee and Cross–Appellant.**

No. 04CA2485.

Colorado Court of Appeals, Div. IV.

Feb. 8, 2007.

Douglas Bruce, Pro Se.

Sherman & Howard L.L.C., John W. Mill, Brian D. Zall, Dee P. Wisor, Denver, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge CASEBOLT.

In this case involving the Taxpayer's Bill of Rights (TABOR), Colo. Const. art. X, § 20, plaintiff, Douglas Bruce, appeals the summary judgment in favor of defendant, Pikes Peak Library District. The District cross-appeals the court's denial of its motion to strike plaintiff's affidavit. We affirm in part, reverse in part, and remand with directions.

Plaintiff instituted this action asserting that the District had violated TABOR by raising its mill levy and creating multiple-fiscal year financial obligations without voter approval, as well as failing to comply with the spending and revenue limits of TABOR. The District moved for, and the trial court granted, summary judgment in its favor on all claims. This appeal followed.

Plaintiff contends the court erred in granting summary judgment. We agree in part.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251 (Colo.1995). We review summary judgments de novo. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd., supra.*

Here, we agree with the trial court that there is no genuine issue of material fact.

Thus, we determine whether the District is entitled to judgment as a matter of law.

## I.

Plaintiff first contends that the District did not have authority to raise its mill levy because it failed to obtain the voter approval TABOR requires. Specifically, he argues that an election occurring in 1986 approving the mill levy increase was not "voter approval in advance" for purposes of TABOR. We disagree.

TABOR provides in pertinent part that "[s]tarting November 4, 1992, districts must have voter approval in advance for ... [a] mill levy above that for the prior year." Colo. Const. art. X, § 20(4)(a).

A pre-TABOR election can serve as "voter approval in advance" for a post-TABOR mill levy increase. See Bolt v. Arapahoe County Sch. Dist. No. 6, 898 P.2d 525 (Colo.1995); see also Nicholl v. E–470 Pub. Highway Auth., 896 P.2d 859, 873 (Colo.1995) (finding that a "voter approved revenue change" prior to TABOR "need not be approved again" after TABOR's passage).

In Bolt, a school district received voter approval to issue general obligation bonds in 1984. In 1992, after the passage of TABOR, the school district certified a bond redemption mill levy that was .771 mills above that in the prior year. The school district did not seek voter approval in 1992, and the plaintiffs argued that the "school district's 1992 bond redemption mill levy increase ... was invalid because the school district did not receive advance voter approval for the increase under [TABOR]." Bolt, supra, 898 P.2d at 534.

The supreme court disagreed and concluded that the 1984 election constituted voter approval in advance, reasoning that, in approving the bond issuance, the voters necessarily also had approved the raising of revenue to repay those bonds. Thus, "the school district had voter approval in advance for its bond redemption mill levy increases." Bolt, supra, 898 P.2d at 536.

Here, the District received voter approval in 1986 to increase the maximum tax levy from two mills to no more than four mills for public library funds. The mill levy has increased and decreased several times, but it is undisputed that it has remained below four mills. In accordance with Bolt, this authorization constitutes "voter approval in advance" for purposes of TABOR. Accordingly, the mill levy increases did not violate Colo. Const. art. X, § 20(4)(a).

We reject plaintiff's assertion that a different result is mandated because property was valued for assessment purposes at about half of its market value in 1986 and at full market value after that date. Nothing in the 1986 ballot measure tied the maximum property tax levy of four mills to any particular assessment ratio.

We further reject plaintiff's assertion that Bolt and Nicholl, supra, are distinguishable because they dealt with bond issues, not mill levies. Nothing in the language of TABOR mandates a different treatment of mill levies for purposes of elections.

## II.

Plaintiff contends that the District created multiple-fiscal year financial obligations without voter approval in violation of TABOR. We disagree.

TABOR requires voter approval for the "creation of any multiple-fiscal year direct or indirect district debt or other financial obligation whatsoever without adequate present cash reserves pledged irrevocably and held for payments in all future fiscal years." Colo. Const. art. X, § 20(4)(b).

"Multiple-fiscal year financial obligation" is a very broad term that can include a multitude of situations. However, the term does not include lease-purchase agreements in which the parties are not bound to renew the lease annually. Colo. Criminal Justice Reform Coal. v. Ortiz, 121 P.3d 288 (Colo. App.2005); see also In re House Bill 99–1325, 979 P.2d 549 (Colo.1999).

The term also does not include multiple-year lease-purchase agreements for equipment such as copy machines and computers. Inclusion of such agreements would lead to absurd results that would cripple the everyday workings of government and lead

to situations in which the cost of an election would exceed the cost of the item leased. *In re House Bill 99–1325, supra.*

Here, plaintiff asserts that a number of contracts the District entered into create multiple-fiscal year financial obligations. The contracts are leases for equipment such as copy machines and telephone equipment, as well as leases for buildings and improvements. All the leases contain nonappropriation clauses providing that the District is not obligated to appropriate funds or make payments in future years. The trial court held that the leases were not subject to TABOR because of the nonappropriation clauses. We agree with the trial court's conclusion as to all the leases except one, but we nevertheless conclude that the District did not need voter approval for that lease.

The one lease that differs from the rest is a real property lease for library facilities. This lease contains a nonappropriation clause, but the clause was not effective until twenty months after the start of the lease. Plaintiff asserts that this initial twenty-month period was a multiple-fiscal year financial obligation that required voter approval.

Assuming, without deciding, that the lease constitutes a multiple-fiscal year obligation within the meaning of the TABOR provision, the lease still did not require voter approval. In the lease, the District warranted to the lessor that the District had funds presently available to pay rental costs for the initial twenty months, and the lease specifies that any further rents would be subject to annual appropriation. Plaintiff has presented no evidence and does not assert that this promise by the District was false, or that it was insufficient to meet the TABOR requirement that funds be pledged and set aside to avoid the election requirement. Hence, the District's lease does not require voter approval because the District possessed adequate then present cash reserves pledged and held for payments during the initial twenty months. *See* Colo. Const. art. X, § 20(4)(b).

III.

Plaintiff contends that the District did not comply with the revenue limits of TABOR. We agree in part.

TABOR places limits on the growth of revenue and spending within a district. The growth is limited to the rate of inflation plus the rate of annual local growth. Colo. Const. art. X, § 20(7). If a district exceeds its revenue limits for a given fiscal year, "the excess *shall* be refunded in the next fiscal year unless voters approve a revenue change as an offset." Colo. Const. art. X, § 20(7)(d) (emphasis added); *see also* § 24–77–101(3)(a), C.R.S.2006 (stating TABOR "requires that the excess revenues be refunded in the next fiscal year" when state revenues exceed the state fiscal year spending limitation).

Districts may use any reasonable method for the refunds, but they must be repaid with ten percent interest. Colo. Const. art. X, § 20(1). A district may effectuate a refund through a temporary tax credit or temporary mill levy rate reduction. Section 39–1–111.5, C.R.S.2006. If the procedures of § 39–1–111.5 are followed, then the refund will be deemed to be reasonable in accordance with TABOR. Section 39–1–111.5(1), C.R.S.2006.

Here, given the disposition of the mill levy claim, it is uncontested that the District complied with TABOR limits in the years 1999–2002. It is also undisputed that the District levied and collected $8,430 more than allowed in 2003. Despite this admitted overage and a stated intent to refund the money, the District argued, and the trial court agreed, that it was still entitled to summary judgment. Relying upon *Bickel v. City of Boulder,* 885 P.2d 215 (Colo.1994), the trial court held that TABOR requires only substantial compliance with its revenue limitation provisions. Given the District's small overage as a percentage and amount of total revenue, the fact that it was an isolated incident, and the fact that the District's actions were taken in good faith, the trial court concluded that the District was in substantial compliance with TABOR.

In our view, the substantial compliance standard is not applicable. That standard applies when reviewing claims to

enforce TABOR's *election* provisions. It ensures that the voting franchise is not unduly restricted and prevents a court from lightly setting aside the results of an election. *See Bickel v. City of Boulder, supra,* 885 P.2d at 227 ("we hold that a 'substantial compliance' standard is the proper measure when reviewing claims brought to enforce [TABOR's] election provisions").

Conversely, TABOR was passed to place limits on the revenue and spending of state and local government. It specifically provides that "[r]evenue collected, kept, or spent illegally ... *shall* be refunded with 10% annual simple interest." Colo. Const. art. X, § 20(1) (emphasis added). It contains no "de minimis" or "substantial compliance" exception to its revenue and spending provisions.

Here, the overage is exactly what TABOR was intended to preclude. *See City of Aurora v. Acosta,* 892 P.2d 264, 267 (Colo.1995) (when interpreting a constitutional provision a court must consider "the mischief to be avoided" (quoting *People v. Y.D.M.,* 197 Colo. 403, 407, 593 P.2d 1356, 1359 (1979)). Moreover, the General Assembly has provided districts with a simple means to effectuate a refund, no matter how small, in § 39–1–111.5. It would be inconsistent to review TABOR's revenue limitations under a substantial compliance standard where a statute that specifies no minimum amount for a refund simultaneously directs how a refund should be effectuated.

Neither party addressed § 39–1–111.5 in the trial court. Acknowledging the overage, the District stated that it intended to institute a refund by adjusting its mill levy, and it represents on appeal that the adjustment has been made. However, because we have no way to verify this assertion and the record does not confirm that a refund has been made, we must remand the case for a determination of whether the District has refunded the overage in compliance with § 39–1–111.5 or in another reasonable manner consistent with § 20(1) of TABOR.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

## IV.

We do not address the District's cross-appeal in which it contends the trial court erred in failing to strike plaintiff's conclusory affidavit. Our conclusion that there is no genuine issue of material fact moots the District's contention.

The judgment is reversed as to the $8,430 revenue overage, and the judgment is affirmed in all other respects. The case is remanded for a determination of whether the District has made a reasonable refund in accordance with TABOR.

HAWTHORNE and METZGER *, JJ., concur.