COLORADO COURT OF APPEALS 2016COA102

Court of Appeals No. 15CA0582
City and County of Denver District Court No. 13CV854
Honorable A. Bruce Jones, Judge

TABOR Foundation, a Colorado non-profit corporation; and Penn Pfiffner,

Plaintiffs-Appellants,

v.

Regional Transportation District; Bill James, Director of the Regional Transportation District; Barbara Deadwyler, Director of the Regional Transportation District; Angie Rivera Malpiede, Director of the Regional Transportation District; Jeff Walker, Director of the Regional Transportation District; Claudia Folska, Director of the Regional Transportation District; Tom Tobiassen, Director of the Regional Transportation District; Gary Lasater, Director of the Regional Transportation District; Kent Bagley, Director of the Regional Transportation District; Judy Lubow, Director of the Regional Transportation District; Larry Hoy, Director of the Regional Transportation District; Paul Daniel Solano, Director of the Regional Transportation District; Lorraine Anderson, Director of the Regional Transportation District; Natalie Menten, Director of the Regional Transportation District; Bruce Daly, Director of the Regional Transportation District; Charles Sisk, Director of the Regional Transportation District; Scientific and Cultural Facilities District; Kathryn Spuhler, Director of the Scientific and Cultural Facilities District; Kathy Kucsan, Director of the Scientific and Cultural Facilities District; Dan Hopkins, Director of the Scientific and Cultural Facilities District; Peggy Lehmann, Director of the Scientific and Cultural Facilities District; Joseph Arcese, Director of the Scientific and Cultural Facilities District; Damon Barry, Director of the Scientific and Cultural Facilities District; Robert Grant, Director of the Scientific and Cultural Facilities District; Rob Johnson, Director of the Scientific and Cultural Facilities District; Harold Logan, Jr., Director of the Scientific and Cultural Facilities District; Shepard Nevel, Director of the Scientific and Cultural Facilities District; Elaine Torres, Director of the Scientific and Cultural Facilities District; Marjorie Long, Director of the Scientific and Cultural Facilities District; Colorado Department of Revenue; and Barbara Brohl, Executive Director of the Colorado Department of Revenue,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE WEBB
Ashby and Harris, JJ., concur

Announced June 30, 2016

Mountain States Legal Foundation, Jeffrey W. McCoy, Steven J. Lechner, Lakewood, Colorado, for Plaintiffs-Appellants

Marla L. Lien, Mindy Marie Swaney, Denver, Colorado, for Defendant-Appellee Regional Transportation District

Norton & Smith, P.C., Charles E. Norton, Denver, Colorado, for Defendant-Appellee Scientific and Cultural Facilities District

Cynthia H. Coffman, Attorney General, Robert H. Dodd, Jr., Senior Assistant Attorney General, Terence C. Gill, Senior Assistant Attorney General, Alison K. Blair, Senior Assistant Attorney General, Denver, Colorado, for Defendant-Appellee Colorado Department of Revenue

¶ 1     This case arose under the Taxpayer's Bill of Rights (TABOR), Colo. Const. art. X, § 20. Plaintiffs, TABOR Foundation and Penn Pfiffner (the Foundation), appeal the summary judgment, entered on stipulated facts, in favor of defendants, Regional Transportation District (RTD), Scientific and Cultural Facilities District (SCFD) (collectively, the Districts), and the Colorado Department of Revenue (DOR), holding House Bill (H.B.) 13-1272 constitutional.

¶ 2     To resolve the case, we must decide whether H.B. 13-1272 violates TABOR by failing to require that the Districts obtain voter approval before collecting sales tax on items or categories not previously taxed because those items or categories were subject to statutory exemptions that H.B. 13-1272 removed. We conclude that despite lacking an election requirement, because H.B. 13-1272 neither imposes a "new tax" nor constitutes a "tax policy change" within the meaning of TABOR, it is constitutional. Therefore, we affirm.

I.     Background

A.     TABOR

¶ 3     Colorado voters adopted TABOR in 1992. "TABOR limits the state's ability to levy new taxes or create new debts . . . ." *Colo.*

*Union of Taxpayers Found. v. City of Aspen*, 2015 COA 162, ¶ 11. It requires advance voter approval before a district may collect "any new tax, tax rate increase, . . . or a tax policy change directly causing a net tax revenue gain to any district." Colo. Const. art. X, § 20(4)(a).

### B.     Inconsistent State and District Taxation

¶ 4     RTD's and SCFD's enabling statutes grant them taxing power coterminous with that of the state. *See* Ch. 248, sec. 1, § 32-13-105(1)(a)-(c), 1987 Colo. Sess. Laws 1255-56 (SCFD's enabling statute); Ch. 285, sec. 2, § 89-20-18(2)(a), 1973 Colo. Sess. Laws 991-92 (granting RTD authority to tax); Ch. 231, sec. 1, § 89-20-18(1)(j), 1969 Colo. Sess. Laws 719 (RTD's enabling statute). But over time, as the General Assembly added and removed tax exemptions, the items or categories subject to taxation by the state and Districts became disparate.

¶ 5     As relevant here, the General Assembly removed the state sales tax exemption for cigarettes most recently in 2009, but the exemption remained in place for RTD and SCFD. *See* Ch. 354, sec. 1, § 39-26-706(1), 2009 Colo. Sess. Laws 1846 (temporarily removing the cigarette exemption); *see also* Ch. 304, sec. 1,

2

§ 39-26-706(1)(a)-(b), 2013 Colo. Sess. Laws 1615 (permanently removing the cigarette exemption).  Thus, the state could collect taxes on cigarettes beginning in 2009, but RTD and SCFD could not.

¶ 6     Similarly, the General Assembly removed the exemptions for direct mail advertising materials, candy, soda, and food containers in 2010.  *See* Ch. 5, sec. 1, § 39-26-102(15)(a)(I), 2010 Colo. Sess. Laws 38 (direct mail advertising materials); Ch. 7, sec. 2, § 39-26-707(2)(d)(I), 2010 Colo. Sess. Laws 46 (candy and soft drinks); Ch. 10, sec. 1, § 39-26-707(1)-(2), 2010 Colo. Sess. Laws 58-59 (food containers).  Again, these exemptions remained in place for RTD and SCFD.

### C.     H.B. 13-1272

¶ 7     To conform the disparate tax exemptions between the state and the Districts, the General Assembly enacted H.B. 13-1272 in 2013.  It granted Districts "the power to levy uniformly throughout the district a sales tax at any rate that may be approved by the board, upon every transaction or other incident with respect to which a sales tax is now levied by the state[.]"  § 32-9-119(2)(a), C.R.S. 2015 (applying to RTD); § 32-13-107(1)(a), C.R.S. 2015

3

(applying to SCFD). Specifically, H.B. 13-1272 removed the exemptions on candy, soft drinks, cigarettes, direct mail advertising materials, and food containers for RTD and SCFD. The Districts began collecting taxes on these categories of items in 2014. The following table summarizes the effects of H.B. 13-1272:

| Item | Taxed by State pre-H.B. 13-1272? | Taxed by Districts pre-H.B. 13-1272? | Taxed by State post-H.B. 13-1272? | Taxed by Districts post-H.B. 13-1272? |
|---|---|---|---|---|
| Advertising Materials | Yes, most recently, as of 2010. | No | Yes | Yes |
| Candy | Yes, most recently, as of 2010. | No | Yes | Yes |
| Cigarettes | Yes, most recently, as of 2009. | No | Yes | Yes |
| Food Containers | Yes, most recently, as of 2010. | No | Yes | Yes |
| Soft Drinks | Yes, most recently, as of 2010. | No | Yes | Yes |

¶ 8    Neither RTD nor SCFD obtained voter approval after H.B. 13-1272 was enacted and before collecting taxes on these items or categories of items.

## D. This Action

¶ 9     The Foundation brought this action, alleging that the taxes collected by RTD and SCFD under H.B. 13-1272 are subject to TABOR's "voter approval in advance" requirement because they constitute a "new tax" and a "tax policy change directly causing a net tax revenue gain to any district." Colo. Const. art. X, § 20(4)(a).

¶ 10    The trial court disagreed, applied the unconstitutional beyond a reasonable doubt standard, and granted the Districts' motions for summary judgment. It ruled on two grounds.

¶ 11    First, H.B. 13-1272 did not constitute a "new tax" under TABOR. The court acknowledged that the General Assembly had granted the Districts the power to collect a sales tax on all items taxed by the state. Thus, while H.B. 13-1272 permitted the Districts to collect taxes on items or categories of items that had not been taxed before its enactment, "a change in the list of items that are subject to sales tax does not constitute the creation of a new tax. Rather, it is an adjustment — primarily of an administrative nature — to an existing tax."

¶ 12    Second, H.B. 13-1272 was not a "tax policy change." The court accorded "policy" its ordinary meaning: "a high level overall

5

plan embracing the general goals and acceptable procedures especially of a governmental body." Then it held that "the administrative simplification contemplated by [H.B. 13-1272], on its face, is not a change in tax policy since it is not 'a high level overall plan.'"

## II.    Summary Judgment Standard

¶ 13    An appellate court reviews de novo a trial court's order granting summary judgment. *Colo. Union of Taxpayers Found.*, ¶ 7. Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file show there are no "genuine issue[s] as to any material fact and that the moving party is entitled to a judgment as a matter of law." C.R.C.P. 56(c).

## III.    Whether the Trial Court Applied the Correct Legal Standard

¶ 14    The Foundation first contends that for three reasons, the trial court should not have applied the "beyond a reasonable doubt" standard to its claims. After examining each reason, we reject this contention.

## A.    Law

¶ 15    An appellate court reviews de novo "whether the [trial] court applied the correct legal standard." *Ledroit Law v. Kim*, 2015 COA 114, ¶ 47.

¶ 16    Also, an appellate court examines the constitutionality of a statute de novo. *Dean v. People*, 2016 CO 14, ¶ 8. Generally, unconstitutionality must be proven beyond a reasonable doubt. *Id.*

## B.    Application

### 1.    Whether TABOR Provides Its Own Interpretive Rule

¶ 17    The Foundation first argues that TABOR provides its own interpretive rule, which supplants the beyond a reasonable doubt standard: "[W]here multiple interpretations of [a TABOR] provision are equally supported by the text . . . , a court should choose that interpretation which it concludes would create the greatest restraint on the growth of government." *Bickel v. City of Boulder*, 885 P.2d 215, 229 (Colo. 1994).

¶ 18    Our supreme court has rejected a similar argument:

> [T]his tenet of construction is not a refutation
> of the beyond-a-reasonable-doubt standard,
> but rather an interpretive guideline a reviewing
> court may employ when it finds two separately
> plausible interpretations of the text of article

> X, section 20. A challenge to the
> constitutionality of a state statute cannot be
> resolved by relying on article X, section 20's
> tool of construction.

*Mesa Cty. Bd. of Cty. Comm'rs v. State*, 203 P.3d 519, 527 (Colo.

2009).

¶ 19     The Foundation does not offer an alternative reading of *Mesa County*. Instead, it relies on *TABOR Foundation v. Colorado Bridge Enterprise*, 2014 COA 106, ¶¶ 18-20, as supporting a different approach. This reliance is misplaced.

¶ 20     True, under the "Standard of Review" heading, the division repeated the above-quoted language of *Bickel*; it did not address the beyond a reasonable doubt standard at all. *Id.* at ¶ 19. However, because the division chose *between* two interpretations of TABOR, *see id.* at ¶ 17 — rather than analyzing whether a statute was unconstitutional *under* TABOR — addressing the beyond a reasonable doubt standard would have been purposeless. Thus, *Colorado Bridge Enterprise* does not carry the weight that the Foundation places on it. And in any event, because "[w]e are bound by the decisions of the Colorado Supreme Court[,]" *Bernal v. Lumbermens Mut. Cas. Co.*, 97 P.3d 197, 203 (Colo. App. 2003), we

could not rely on a court of appeals opinion to avoid our supreme court's decision in *Mesa County*.

¶ 21    Therefore, TABOR's internal rule of construction does not provide the standard of review for assessing whether a statute is unconstitutional under TABOR.

### 2.    Whether the Beyond a Reasonable Doubt Standard is Fundamentally Flawed

¶ 22    The Foundation also invites us to abandon the beyond a reasonable doubt standard altogether because it is "archaic and undefined." The Foundation relies on secondary authority and decisions in some other jurisdictions.

¶ 23    To be sure, squaring the "heavy burden" to deem a statute unconstitutional, *People v. Vasquez*, 84 P.3d 1019, 1022 (Colo. 2004) (citation omitted), with the de novo review applicable to reviewing the constitutionality of statutes could seem anomalous, *see United Air Lines, Inc. v. City & Cty. of Denver*, 973 P.2d 647, 656 (Colo. App. 1998) (Briggs, J., specially concurring) (noting the standard "subtly mutates the accepted beginning point for a constitutional analysis, creating an additional and final step which, even when taken properly, is treacherous"), *aff'd*, 992 P.2d 41 (Colo.

2000), *cited with approval in City of Fort Collins v. Colo. Oil & Gas Ass'n*, 2016 CO 28, ¶ 10.[1]

¶ 24 Even so, our supreme court has consistently applied the beyond a reasonable doubt standard when determining whether a statute violates TABOR. *See, e.g., Huber v. Colo. Mining Ass'n*, 264 P.3d 884, 889 (Colo. 2011); *Mesa Cty.*, 203 P.3d at 527; *Barber v. Ritter*, 196 P.3d 238, 247 (Colo. 2008); *Zaner v. City of Brighton*, 917 P.2d 280, 286 (Colo. 1996). And recently, albeit in a different context, the court reiterated that a challenger must prove a statute is unconstitutional beyond a reasonable doubt to prevail. *See Dean*, ¶ 8.

---

[1] While courts in every state presume legislation to be constitutional, "many states find a statute unconstitutional under a less deferential standard of review than does Colorado." Laura J. Gibson, *Beyond a Reasonable Doubt: Colorado's Standard for Reviewing a Statute's Constitutionality*, 23 Colo. Law. 835, 837 (Apr. 1994). For example, the presumption of constitutionality does not require Utah courts to accept any conceivable purpose for the legislation. *Id.* at 837 & n.39 (citing *Malan v. Lewis*, 693 P.2d 661, 671 n.14 (Utah 1984)). And in Kansas, once the challenger presents substantial, competent evidence that the statute is unconstitutional, the burden shifts to the state to show that the statute is constitutional. *Id.* at 837 & n.41 (citing *Bingo Catering & Supplies, Inc. v. Duncan*, 699 P.2d 512, 517 (Kan. 1985)).

¶ 25   Therefore, we decline the Foundation's invitation to disavow the beyond a reasonable doubt standard when assessing whether a statute is unconstitutional.

   3.   Whether the Foundation Can Avoid the Beyond a Reasonable Doubt Standard by Purporting to Challenge Only the Districts' Implementation of H.B. 13-1272, Not Its Text

¶ 26   Next, the Foundation tries to duck the reasonable doubt standard entirely by asserting that it is not challenging the constitutionality of H.B. 13-1272 at all.  Instead, the Foundation characterizes this case as challenging only the Districts' "decisions to levy and collect taxes . . . without first seeking voter approval."

¶ 27   But a closer look at this characterization reveals its assumption that while H.B. 13-1272 empowers the Districts to collect taxes, they could defer doing so until — if ever — they obtained voter approval.  Accepting this assumption, the TABOR violation does not inhere in H.B. 13-1272; it results from the Districts collecting taxes without prior voter approval.  But this assumption cannot be reconciled with the allegations of the complaint, the language of H.B. 13-1272, and its legislative history.

¶ 28   The Foundation's complaint directly challenged the constitutionality of H.B. 13-1272, alleging that it "unlawfully

11

authorizes RTD and SCFD to levy new sales and use taxes" and that it "empower[s] [the Districts], without a vote of the people, to levy taxes." We reject the Foundation's revisionist history on appeal.

¶ 29 Even if the Foundation could avoid the thrust of the complaint, it cannot escape the language of H.B. 13-1272. As discussed above in more detail, H.B. 13-1272 removes exemptions for items and makes those items subject to the Districts' sales tax. *See* Ch. 354, secs. 6 & 8, §§ 32-9-119(2)(a), 32-13-107(1)(a), 2009 Colo. Sess. Laws 1847-49. H.B. 13-1272 does not include any discretionary wording as to taxing these items, it is silent on whether the Districts must hold an election before collecting taxes on these items, and it does not mention TABOR at all. *See Colo. State Bd. of Accountancy v. Raisch*, 960 P.2d 102, 104, 108 (Colo. 1998) (observing that a statute which, on its face, grants an "absolute and unqualified . . . power" will not be interpreted to imply a limitation in the absence of such language from the General Assembly); *contra City of Colo. Springs v. Securcare Self Storage, Inc.*, 10 P.3d 1244, 1249 (Colo. 2000) (concluding that statute did not grant absolute authority to act because it included limiting language that action was "subject to the requirements of" other

12

statutes) (citation omitted); *see also Bedee v. Am. Med. Response of Colo.*, 2015 COA 128, ¶ 39 (noting that a court should not read words into statutes that the General Assembly did not include).

¶ 30    And even overlooking the absence of any reference to discretion, we would still not read H.B. 13-1272's expansion of the Districts' taxing power as merely discretionary, pending an election, for two reasons.

¶ 31    First, given the legislative intent to "simplify the administration and collection" of taxes, Ch. 337, sec. 1, § 1(c), 2013 Colo. Sess. Laws 1964 (legislative declaration), reading in discretion would frustrate the legislative purpose.  This is especially so because the Districts might seek — but never obtain — voter approval, perpetuating the very disuniformity that H.B. 13-1272 sought to remove.

¶ 32    Second, the legislative history includes several references to TABOR elections, *see, e.g.*, *Hearings on H.B. 13-1272 before the H. Fin. Comm.*, 69th Gen. Assemb., 1st Sess. (Mar. 27, 2013); *Hearings on H.B. 13-1272 before the S. Fin. Comm.*, 69th Gen. Assemb., 1st Sess. (Apr. 16, 2013).  These references strongly suggest that the General Assembly's silence concerning such elections must have

been a choice, not mere inadvertence. This suggestion strengthens because other legislation has conditioned action on holding elections. *See, e.g.*, Ch. 118, sec. 163, § 32-9-119(2)(a), 1992 Colo. Sess. Laws 910 ("[T]he district . . . *after approval by election . . .* shall have the power to levy uniformly throughout the district a sales tax . . . .") (emphasis added); *see also Safeco Ins. Co. v. Westport Ins. Corp.*, 214 P.3d 1078, 1079 (Colo. App. 2009) (Because the General Assembly "certainly knew how to deal with interest in this area . . . we cannot infer that it was through mere inadvertence that it failed to provide for the interest that [Safeco] seeks.") (citation omitted).

¶ 33 Thus, the Foundation's constitutional claims attack the text of H.B. 13-1272, not merely the Districts' implementation of the tax without voter approval. And because the Foundation directly attacks H.B. 13-1272, to prevail it must prove unconstitutionality beyond a reasonable doubt. *See, e.g.*, *Mesa Cty.*, 203 P.3d at 526-28 (assessing whether statutes violated TABOR under the beyond a reasonable doubt standard).

¶ 34 Having rejected all of the Foundation's arguments against the beyond a reasonable doubt standard, we take up its alternative

assertion that the trial court misinterpreted and then misapplied this standard.

IV. Whether the Trial Court Misinterpreted the Beyond a Reasonable Doubt Standard

¶ 35    The Foundation argues that even if the beyond a reasonable doubt standard applies, the trial court misinterpreted it by requiring evidence that "the Legislature drafted a law using language designed to circumvent the requirements of TABOR, *i.e.,* a tax policy change disguised as administrative simplification."

¶ 36    The trial court did not cite any authority for this view of the beyond a reasonable doubt standard, defendants have not cited any, and we can find none.  This lack of authority dissuades us from adopting the trial court's position.  But declining to do so leaves unanswered another question: Just what type of proof do Colorado courts require before deeming a statute unconstitutional beyond a reasonable doubt?

¶ 37    To be sure, many Colorado cases only repeat that "[o]ne who raises a constitutional challenge must prove, beyond a reasonable doubt, that the statute impairs a right granted by the . . . Constitution."  *People v. Wood*, 999 P.2d 227, 229 (Colo. App.

15

2000).  But recently, our supreme court explained that a court will not strike down a statute "unless a 'clear and unmistakable' conflict exists between the statute and a provision of the Colorado Constitution."  *Colo. Ethics Watch v. Indep. Ethics Comm'n*, 2016 CO 21, ¶ 14 (quoting *Coffman v. Williamson*, 2015 CO 35, ¶ 13).  In other words, to hold a statute unconstitutional beyond a reasonable doubt, the constitutional flaw must be so clear that the court can act without reservation.  *See Cantina Grill, JV v. City & Cty. of Denver Cty. Bd. of Equalization*, 2012 COA 154, ¶ 15 (explaining that the "delicate duty" of declaring a statute unconstitutional should not be taken "unless the conflict between the law and the constitution is clear and unmistakable") (citation omitted), *aff'd*, 2015 CO 15.

¶ 38    Thus, we conclude that the trial court misinterpreted the law.  Yet, answering this substantive question and identifying the correct standard still leaves a procedural question unresolved: Should we remand with direction or apply the standard ourselves?  We choose the latter for reasons rooted in de novo review.

¶ 39    Because we review both the constitutionality of statutes and summary judgments de novo, and here all parties stipulated to the

relevant facts, we do not discern any benefit in remanding for the trial court to correctly apply the beyond a reasonable doubt standard to those stipulated facts, subject to our again reviewing its decision de novo in the event of a second appeal. *Cf. Kirkmeyer v. Dep't of Local Affairs*, 313 P.3d 562, 568 (Colo. App. 2011) ("[J]udicial economy would not be served by leaving [the statute's] interpretation to the Board on remand, subject to our de novo review in a later appeal, and we decline to do so."); *see also Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1087 n.6 (8th Cir. 2009) ("Because relevant facts are undisputed and complete, remand to the district court would only further delay the ultimate disposition of [the party's] claim . . . .").

¶ 40   For these reasons, we address the Foundation's constitutional claims by asking whether any of the alleged constitutional defects in H.B. 13-1272 is so clear that we can hold it unconstitutional without any principled reservation.

V.   Whether H.B. 13-1272 Violates TABOR Beyond a Reasonable Doubt

¶ 41   The Foundation contends that because the trial court improperly concluded that H.B. 13-1272 does not impose either a

"new tax" or a "tax policy change" causing a net revenue increase, the court erred in holding that TABOR's voter approval requirement was not triggered. Colo. Const. art. X, § 20(4)(a). The new tax contention presents a close question that leads us to look further and also consider prior voter approval. We conclude that although H.B. 13-1272 does not impose a new tax, even if it did, the Districts had received prior voter approval. We further conclude that H.B. 13-1272 does not constitute a tax policy change.

## A.    "New Tax"

¶ 42    The Foundation asserts that removing exemptions on certain items or categories of items under H.B. 13-1272 resulted in a new tax under TABOR because H.B. 13-1272 authorized the Districts to collect taxes on items or categories of items for the first time. The Districts counter that because they have long had broad authority to tax, removing limited exemptions is not akin to imposing new taxes.

### 1.    H.B. 13-1272 Did Not Create a New Tax

#### a.    Law

¶ 43    TABOR does not define "new tax." Nor has any Colorado case done so.

¶ 44    Instead, our supreme court has examined the purpose behind the statute at issue to determine whether it created a tax for TABOR purposes. *See Barber*, 196 P.3d at 249 ("[W]hen determining whether a charge is a fee or a tax, courts must look to the primary or principal purpose for which the money was *raised*, not the manner in which it was ultimately *spent*."). In *Barber*, the court explained that because the "primary purpose" of the statute there was "not to raise revenue for general governmental expense, any production of such revenue can only be 'incidental,' and does not, therefore, constitute a tax." *Id.* at 252.[2]

### b.    Application

¶ 45    By any fair reading, the primary purpose of H.B. 13-1272 — as demonstrated by both its structure and its legislative history — was not to raise revenue.

¶ 46    Beginning with the structure of the bill, in addition to removing exemptions on some categories of items, it also *added* tax exemptions on vending machine food, machinery, machine tools, low-emitting power vehicles, power sources, and parts used for

---

[2] We do not suggest that a purposive definition of "new tax" would resolve all possible cases, such as one where the asserted purpose was not to generate revenue, but that was the obvious effect.

converting such power sources. *See* Ch. 337, sec. 2,

§ 32-9-119(2)(a)(I), 2013 Colo. Sess. Laws 1965 (vending machine

food, machinery, and machinery tools); Ch. 337, sec. 3,

§ 32-13-107(1)(a)(I), (III), 2013 Colo. Sess. Laws 1965 (same); sec. 2,

§ 32-9-119(2)(a)(II), 2013 Colo. Sess. Laws at 1965 (low-emitting

power vehicles, power sources, or parts used for converting such

power sources); sec. 3, § 32-13-107(1)(a)(II), 2013 Colo. Sess. Laws

at 1965 (same). Thus, while H.B. 13-1272 expanded the Districts'

ability to tax certain categories of items, the Districts were also

precluded from taxing other categories of items under H.B.

13-1272.

¶ 47 The legislative declaration accompanying H.B. 13-1272 also

shows that the purpose of the legislation was not to raise revenue.

*See* sec. 1, § 1(c), 2013 Colo. Sess. Laws at 1964 ("[T]he intended

purpose of the tax expenditures in this act is to simplify the

administration and collection of sales and use tax for [RTD and

SCFD]."). And during the enactment process, legislators reiterated

that the bill was intended only to streamline the Districts' collection

of taxes, not to generate revenue. *See, e.g., Hearings on H.B.*

*13-1272 before the H. Fin. Comm.*, 69th Gen. Assemb., 1st Sess. (Mar. 27, 2013).

¶ 48 Yet, the funds transfer at issue in *Barber* — from special cash funds to the general fund — did not create *any* new tax, but only removed limitations on spending the transferred funds. *See Barber*, 196 P.3d at 248-52. Indeed, the court also concluded the funds were not taxes at all, but rather were properly characterized as fees. *See id.* And here, everyone would agree — as the Foundation points out — that the Districts are collecting taxes not previously assessed. For this reason, we look beyond *Barber*.

¶ 49 Aside from the structure and legislative purpose of H.B. 13-1272, looming large over every TABOR analysis is the caution against interpreting TABOR in a way that would "cripple the government's ability to function." *Mesa Cty.*, 203 P.3d at 529; *see also Barber*, 196 P.3d at 248 ("[W]e are especially mindful of the cautious line we have drawn to reasonably interpret [TABOR] and maintain the government's ability to function efficiently."). Applying that principle here, to hold that removing exemptions requires an election under TABOR would hamper the General Assembly's ability to administer taxation efficiently.

¶ 50    Given all this, we conclude that H.B. 13-1272 did not impose a new tax for TABOR purposes.  And because H.B. 13-1272 did not impose a new tax, the Districts were not required to hold another election before imposing taxes under it.  Yet, recognizing that the question is close, we also consider whether, if it did impose a new tax, the Districts had prior voter authorization without holding another election.

### 2.    Even if H.B. 13-1272 Created a New Tax, the Districts' Ballot Measures Granted Them Authority to Collect Taxes on the Items for Which H.B. 13-1272 Removed Exemptions

¶ 51    A division of this court has held that an election is not required if voters approved the new tax in advance.  *See Bruce v. Pikes Peak Library Dist.*, 155 P.3d 630, 632 (Colo. App. 2007) ("A pre-TABOR election can serve as 'voter approval in advance' for a post-TABOR mill levy increase." (quoting Colo. Const. art. X, § 20(4))).  In *Bruce*, voters approved a mill levy ceiling in advance, and while the mill levy rate increased and decreased several times after the election, the rate never exceeded the limit approved by the voters.  *See id.*

¶ 52    We consider *Bruce* well-reasoned and apply it to decide whether RTD or SCFD voters provided prior approval to tax the

22

items or categories of items for which H.B. 13-1272 removed exemptions.

### a. RTD

¶ 53    Recall that the General Assembly granted RTD the authority to tax coterminous with the state.  *See* § 89-20-18(2)(a), 1973 Colo. Sess. Laws at 991-92.  In 1973, RTD voters permitted the district to collect a sales tax on "every taxable transaction."  But did this grant of authority also permit RTD to impose a sales tax on "every taxable transaction, *now and in the future*"?

¶ 54    Colorado courts have held that ballot measures should be interpreted like statutes.  *See, e.g., Huber*, 264 P.3d at 889 ("We use the general rules of statutory construction in construing citizen-initiated measures.").  And statutes worded in the present tense are interpreted to express the future tense as well.  § 2-4-104, C.R.S. 2015; *see Schwankl v. Davis*, 85 P.3d 512, 515 (Colo. 2004) (noting that "crime *being* committed" in statute "includes present as well as future crimes") (emphasis added).

¶ 55    Interpreting the 1973 ballot like a statute, then, in 1973 the voters granted RTD authority to collect taxes on "every taxable transaction, now and in the future."  After 1973, the state removed

exemptions on candy, soft drinks, cigarettes, direct mail advertising materials, and food containers. But because the voters had already granted RTD the authority to tax taxable transactions in the future — and because the sale of items in the categories for which H.B. 13-1272 removed exemptions became taxable transactions in the future by the state — the 1973 ballot provided prior voter approval to RTD.

¶ 56    True enough, the 1973 RTD ballot set a thirty-year maturity date for the bonds issued under that measure. But no Colorado case, and very limited out-of-state authority, addresses whether a ballot becomes ineffective once the underlying financing has expired. Because many ballot measures may have temporal limitations tied to the terms of the financing subject to approval, "[s]uch a significant expansion of precedent . . . is more properly the province of our supreme court." *Neher v. Neher*, 2015 COA 103, ¶ 66.

¶ 57    In sum, even if H.B. 13-1272 imposed new taxes, because RTD voters had given their prior approval, another TABOR election was not constitutionally required.

## b. SCFD

¶ 58 The General Assembly also granted SCFD authority to tax coterminous with that of the state. *See* § 32-13-105(1)(a), 1987 Colo. Sess. Laws at 1255. And in 1994, SCFD voters granted SCFD authority to continue to impose taxes "currently levied and collected" by SCFD.[3]

¶ 59 For the reasons explained above with regard to RTD, we also interpret the 1994 ballot measure as granting SCFD the power to impose taxes "currently, *or in the future*, levied and collected." So interpreting the 1994 ballot, the SCFD voters granted the district prior approval to collect taxes under H.B. 13-1272. And as with RTD, because SCFD voters had granted prior authority to collect taxes that SCFD would impose in the future, an election was not required, even if H.B. 13-1272 created a new tax.

¶ 60 In the end, we reiterate the "high burden" to declare a statute unconstitutional. *Huber*, 264 P.3d at 889. Although neither the new tax nor the prior voter approval question is free from doubt,

---

[3] SCFD's first ballot measure in 1988 did not reference tax *collection*. Thus, we do not assess whether this measure granted SCFD prior voter approval to collect taxes on the categories or items for which H.B. 13-1272 removed exemptions.

25

this standard requires us to reject constitutional challenges in close cases. *See Bormann v. Bd. of Supervisors*, 584 N.W.2d 309, 322 (Iowa 1998) (acknowledging the rule "finding constitutionality in close cases").

### B. "Tax Policy Change"

¶ 61 The Foundation also asserts that by eliminating exemptions on certain items or categories of items, H.B. 13-1272 effected a tax policy change directly causing a net tax revenue gain to the Districts. In contrast to the new tax question, this question is not close.

¶ 62 As with "new tax," TABOR does not define "tax policy change."

¶ 63 The trial court defined this phrase using a dictionary definition of "policy": "a high[ ]level overall plan embracing the general goals and acceptable procedures especially of a governmental body." *Merriam-Webster Online Dictionary*, https://perma.cc/ZAG7-C37P; *see Roalstad v. City of Lafayette*, 2015 COA 146, ¶ 34 ("[W]here, as here, the statute does not define a term, the word at issue is a term of common usage, and people of ordinary intelligence need not guess at its meaning, we may refer to dictionary definitions in determining the plain and ordinary meaning.") (citation omitted);

*see also* Colo. Op. Att'y Gen. No. 96-01 (Feb. 27, 1996) (defining "policy" as "the overall goal or object of government").

¶ 64    This court primarily uses *Webster's Third New International Dictionary* (2002) (*Webster's 2002*).  *See, e.g., Prospect 34, LLC v. Gunnison Cty. Bd. of Cty. Comm'rs*, 2015 COA 160, ¶ 14.  It contains a similar definition for policy: "a projected program consisting of desired objectives and the means to achieve them." *Webster's 2002* at 1754.

¶ 65    Applying these definitions, the Districts' "high level overall plan" could be understood one of two ways: funding their operations based on a sales tax or imposing a sales tax broadly, subject to a few exemptions.  But under either iteration, H.B. 13-1272 did not *change* the Districts' high level overall plan — after the statute's enactment, the Districts still impose a broad sales tax, and this broad sales tax remains subject to a few exemptions.  *See* sec. 2, § 32-9-119(2)(a)(I)-(II), 2013 Colo. Sess. Laws at 1965 (adding exemptions to some categories of items); sec. 3, § 32-13-107(1)(a)(I)-(III), 2013 Colo. Sess. Laws at 1965 (same).

Thus, the high level overall plan for the Districts has stayed consistent: taxing a broad range of tangible items.[4]

¶ 66    For these reasons, we conclude that H.B. 13-1272 did not constitute a tax policy change under TABOR.

## VI.   Attorney Fees

¶ 67    Because the Foundation was not a successful plaintiff, it is not entitled to recover attorney fees under TABOR.  *See* Colo. Const. art. X, § 20(1); *City of Wheat Ridge v. Cerveny*, 913 P.2d 1110, 1115 (Colo. 1996).

## VII.   Conclusion

¶ 68    The summary judgment is affirmed.

JUDGE ASHBY and JUDGE HARRIS concur.

---

[4] The Foundation also asserts that the Districts' shift to tax parity with the state constitutes a tax policy change.  However, because the Foundation did not raise this argument until its reply brief, we need not address it.  *See Saint John's Church in the Wilderness v. Scott*, 2012 COA 72, ¶ 9 n.3.